PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, Plaintiff,

v.

BANK OF AMERICA CORPORATION, et al., Defendants.

No. 11 Civ. 733(WHP).

United States District Court, S.D. New York.

April 17, 2013.

Order Denying Reconsideration June 12, 2013.

Mark R. Rosen, Jeffrey A. Barrack, Barrack, Rodos & Bacine, Philadelphia, PA, A. Arnold Gershon, Barrack, Rodos & Bacine, New York, NY, David Avi Rosenfeld, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, for Plaintiff.

Jay B. Kasner, Scott D. Musoff, Skadden, Arps, Slate, Meagher & Flom LLP, Patrick J. Smith, Jeffrey David Rotenberg, John Michael Hillebrecht, DLA Piper U.S. LLP, Samantha Noel Bent, Dewey & Leboeuf, Robert Jeffrey Jossen, Katherine Keely Rankin, Dechert, LLP, Lawrence Jay Portnoy, Brian Marc Burnovski, Charles S. Duggan, Davis Polk & Wardwell L.L.P., James J. Capra, Jr., King & Spalding LLP, Fraser Lee Hunter, Jr., Jacob David Zetlin–Jones, Wilmer, Cutler, Hale & Dorr, L.L.P., Michael G. Bongiorno, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, Adam Jay Wasserman, Dechert LLP, Princeton, NJ, Jeffrey B. Rudman, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge.

Lead Plaintiff Pennsylvania Public School Employees' Retirement System

("Plaintiff") brings this putative class action against Bank of America Corporation ("BoA") and current and past officers and directors of BoA: Kenneth D. Lewis, Joseph Lee Price, II, Brian T. Moynihan, Neil Cotty, and Charles H. Noski (the "Executive Defendants"). The Executive Defendants move to dismiss the Amended Consolidated Class Action Complaint. For the following reasons, the Executive Defendants' motion is denied.

## BACKGROUND

This Court's July 11, 2012 Memorandum & Order describes the allegations undergirding this action. *See Pa. Pub. Sch. Emps' Ret. Sys. v. Bank of Am. Corp.*, 874 F.Supp.2d 341, 346 (S.D.N.Y.2012). In that Memorandum & Order, this Court dismissed all defendants except BoA from this action, granted Plaintiff leave to replead its claims against the Executive Defendants, and denied the motion to dismiss with respect to the Section 10(b) and Rule 10b–5 claim against BoA. Plaintiff filed its Amended Complaint on August 13, 2012.

Originally, Plaintiff alleged two claims against the Executive Defendants: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5, and (2) violations of Section 20(a) of the Exchange Act. This Court dismissed Plaintiff's first claim because it failed to plead the required strong inference of scienter. *Pa. Pub. Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 359. This Court also dismissed Plaintiff's second claim for failing to plead the required culpable state of mind. *Pa. Pub. Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 368.

In its initial Complaint, Plaintiff alleged that the BoA Defendants: (1) tolerated robo-signing; (2) failed to disclose BoA's vulnerability to repurchase claims; (3) deliberately circumvented internal controls in establishing allowances for repurchase claims; (4) kept reserves for repurchase claims low to forestall additional repurchase claims; (5) fought repurchase claims to discourage investors from asserting additional ones; (6) resisted investor attempts to examine loan files; (7) concealed BoA's use of Mortgage Electronic Registration Systems, Inc. ("MERS"); and (8) failed to notify mortgage-backed securities ("MBS") purchasers of breaches. Plaintiff also alleged that the magnitude of the fraud created an additional basis for establishing scienter. This Court found those allegations insufficient and held that "Plaintiff does not allege that the Executive Defendants knew of specific contradictory information at the same time they made misleading statements." *Pa. Pub. Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 359.

In its Amended Complaint, Plaintiff alleges that the Executive Defendants made misleading statements despite knowing that (1) BoA was vulnerable to repurchase claims; (2) BoA had a material weakness in its internal controls; and (3) BoA was failing to comply with generally accepted accounting principles ("GAAP") and SEC regulations.

First, Plaintiff alleges that a letter dated May 13, 2010 from BoA's outside counsel to the Financial Crisis Inquiry Commission ("FCIC") establishes Moynihan's scienter. The letter "summarized the negative effects flowing from BoA's overemphasis on generating loans for securitization without due regard to prudent lending." *Pa. Pub. Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 364. It was sent in response to a request from FCIC Chairman Green, who asked Moynihan to expand on prior testimony that he had given to the FCIC. (Amended Consolidated Class Action Complaint, dated August 13, 2012 ("AC") ¶¶ 86, 301.) The letter contradicted Moynihan's subsequent representations regarding BoA's

vulnerability to repurchase claims. (AC ¶ 302.)

Plaintiff also alleges, more generally, that the other Executive Defendants knew of repurchase liabilities and did not adequately disclose them. Previously, this Court found that the Executive Defendants had been "forthright in disclosing losses on repurchase claims." *Pa. Pub. Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 361. Plaintiff now alleges that even if the Executive Defendants disclosed certain repurchase *claims,* they failed to disclose repurchase *demands.* (AC ¶ 302). Repurchase claims refer to lawsuits or other formal proceedings seeking to compel repurchase; repurchase demands refer to pre-litigation letters requesting repurchase. Similarly, Plaintiff alleges that scienter can be inferred from the fact that BoA entered into tolling agreements with Government Sponsored Enterprises ("GSEs") regarding their repurchase demands. (AC ¶ 302(a).) Plaintiff alleges that BoA wrongfully delayed disclosure of these demands.

Second, Plaintiff alleges that the Executive Defendants were knowingly responsible for material weaknesses in BoA's internal controls. (AC ¶ 304.) Specifically, on January 29, 2010, the SEC sent a letter to BoA regarding BoA's policy of accounting for certain contingencies. The January letter asked BoA to disclose its public filing information regarding its repurchase reserve calculation. Cotty and Noski were directly involved in replying to the letter. On May 3, 2010, the SEC sent another comment letter advising BoA that any "future filing" would require further disclosures. (AC ¶ 304(c).)

Third, Plaintiff alleges that the Executive Defendants failed to disclose information required by GAAP and SEC regulations. Specifically, Plaintiff alleges that generally accepted accounting principles require disclosure of potential liabilities.

The Executive Defendants were made aware of potential liabilities through their review of various demand letters and their role in subverting generally accepted accounting principles. (AC ¶¶ 121(e), (k), (l), (n), 303, 304.) By certifying that they were complying with reporting obligations, they knowingly made materially misleading statements.

## DISCUSSION

### I. Legal Standard

On a motion to dismiss, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted). "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News. LLC, et al. v. Am. Media Inc.,* 680 F.3d 162, 185 (2d Cir.2012). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice, if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). A complaint alleging securities fraud must meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007).

## II. *Section 10(b) and Rule 10b–5 Claims*

█ Plaintiff asserts that the Executive Defendants violated Section 10(b) of the Exchange Act and Rule 10b–5. To state a claim for relief under Section 10(b) and Rule 10b–5, Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP,* 603 F.3d 144, 151 (2d Cir.2010). The parties dispute whether the Amended Complaint adequately alleges scienter.

█ The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that the plaintiff "plead with particularity facts giving rise to a *strong* inference that the defendant acted" with an "intent to deceive, manipulate, or defraud" or acted recklessly. *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 198 (2d Cir.2009) (internal quotations omitted) (emphasis in original). "Recklessness is defined as at the least, an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA,* 553 F.3d at 198 (internal quotation marks and alternations omitted). "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (emphasis in original).

█ In assessing whether a plaintiff has stated a claim, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs,* 551 U.S. at 323, 127 S.Ct. 2499. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324, 127 S.Ct. 2499. "[S]cienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA,* 553 F.3d at 198. "[T]he strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater if there is no motive." *ECA,* 553 F.3d at 198–99 (internal quotation marks omitted). Here, Plaintiff relies on the second prong. (Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Opp'n") at 5.)

## A.  Repurchase Claims

■ Addressing Moynihan first, Plaintiff now alleges that the May 13 letter establishes his scienter because Moynihan knew of the information in the letter but nevertheless went on to make statements contradicting the representations in the letter. (AC ¶ 86.) This Court previously rejected the argument that the letter established scienter for the Executive Defendants because there was "no allegation that the Executive Defendants saw the letter or knew of its contents." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F.Supp.2d at 359.

In the Amended Complaint, Plaintiff alleges that Moynihan knew of the letter because it constituted part of his sworn testimony to the FCIC. According to Plaintiff, the letter responded to a request from FCIC Chairman Green, which was addressed to Moynihan and asked him to expand on his testimony. While the letter was signed by BoA's outside counsel on behalf of BoA, Moynihan likely knew its contents because it purported to respond to the FCIC's demand for Moynihan to supplement his testimony.

BoA argues that, even if Moynihan knew of the letter, there is nothing in the letter that specifically contradicted any of his public statements. But this Court's finding that the letter "summarized the negative effects flowing from BoA's overemphasis on generating loans for securitization without due regard to prudent lending" closes the door on that argument at the pleading stage. *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F.Supp.2d at 364. This Court relied on that fact to find that "Plaintiff's allegations concerning BoA's knowledge of repurchase claims also raises a strong inference of scienter on BoA's part." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F.Supp.2d at 363–64. The May 13 letter establishes that Moynihan had knowledge of the repurchase claims and renders his subsequent representations misleading. Accordingly, Plaintiff adequately pleads the required strong inference that Moynihan acted with scienter regarding the repurchase claims.

■ Turning to the other Executive Defendants, Plaintiff alleges that their knowledge of undisclosed repurchase demands render their subsequent certifications misleading. But immediate disclosure of repurchase demands is not required. *See Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 760–61 (7th Cir.2007) ("Prudent managers conduct inquiries rather than jump the gun with half-formed stories as soon as a problem comes to their attention."); *cf. also Reiss v. Pan Am. World Airways, Inc.*, 711 F.2d 11, 14 (2d Cir. 1983) (holding that, in the context of corporate merger negotiations, "[d]isclosure may in fact be more misleading than secrecy" because such negotiations involve "complex bargaining between two (and often more) parties which may fail as well as succeed, or may succeed on terms which vary greatly from those under consideration at the suggested time of disclosure").

Here, the repurchase demands required investigation and not all demands were meritorious. Plaintiff alleges that, given the size of the demands and the nature of the claims, the Executive Defendants must have known that the repurchase demands constituted a major undisclosed liability. But nothing in the Amended Complaint suggests that the Executive Defendants honestly believed that the existing reserves were inadequate. The Amended Complaint does not allege that the Executive Defendants conducted a review of each demand and assessed its merit. And regardless, BoA disclosed unresolved repurchase requests in August 2010 to the tune of $11.1 billion. As such, Plaintiff's allegations regarding the Executive Defendants' response to repurchase claims do

not plausibly create a strong inference of scienter.

Nor do Plaintiff's allegations regarding non-disclosure of tolling agreements. Tolling agreements are entered into for a variety of reasons, and nothing in the Amended Complaint suggests that the Executive Defendants knew that the claims underlying the tolling agreements were valid. And BoA disclosed GSE repurchase requests in August 2010. (Declaration of Scott D. Musoff, dated Jan. 11, 2012 ("Musoff Decl.") Ex. D: 10–Q, dated Aug. 6, 2010 ("Aug. 2010 10–Q") at 40.) Accordingly, Plaintiff's allegations establish Moynihan's scienter but fail to establish scienter against the other Executive Defendants regarding the statements they made about repurchase claims.

### B. *Material Weakness in Internal Controls*

■ Plaintiff alleges that the Executive Defendants were knowingly responsible for undisclosed weaknesses in BoA's internal controls. (AC ¶ 302(e).) This Court previously found that BoA failed to disclose a material weakness in its internal controls but noted that "it does not make sense that the Executive Defendants would circumvent internal controls to manipulate allowance levels while being forthright in disclosing losses on repurchase claims," *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F.Supp.2d at 361. Plaintiff attempts to remedy this deficiency by alleging that the Executive Defendants did not timely disclose BoA's losses on repurchase claims and did not disclose repurchase demands. (AC ¶¶ 302(e), 304(e).)

■ Specifically, Plaintiff argues that an SEC comment letter indicates that Cotty and Noski were knowingly responsible for the weakness in internal controls. (AC ¶ 304.) In that letter, the SEC inquired as to why BoA had recognized a $3 billion settlement with the GSEs all at once, rather than accounting for portions of the liability earlier. Plaintiff argues that this letter demonstrates that the Executive Defendants were aware that it was improper not to disclose contingent liabilities. But Plaintiff does not plead sufficient facts regarding the Executive Defendants' judgment regarding the merits of the repurchase demands. Because these demands were speculative, they do not form the basis of a claim for lack of internal controls. Plaintiff's additional allegations do not change this analysis. To the extent that the SEC letter is a criticism of accounting practice, "[a]llegations of accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *In re JP Morgan Chase Sec. Litig.*, No. 02 Civ. 1282(SHS), 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) (internal alterations omitted).

### C. *GAAP and SEC Regulations*

■ Although the Executive Defendants' failure to disclose potential liability arising from repurchase demands is not misleading in its own right, it may nevertheless violate GAAP and SEC regulations. *See S.E.C. v. Steadman*, 967 F.2d 636, 645 (D.C.Cir.1992) (noting that "accounting rules d[o] not obligate appellants to attempt to quantify the contingent liability through rough guesses or speculation," but holding that [generally accepted accounting principles] require disclosure of "the general nature of the potential liability, as long as there [is] 'a reasonable possibility' that it [will] be realized."). Violating GAAP and SEC regulations may not amount to a material misrepresentation. But falsely certifying compliance with those same regulations certainly can. *See Steadman*, 967 F.2d at 645.

The Amended Complaint alleges sufficient specific facts to demonstrate that the Executive Defendants were aware of the repurchase demands, even if they were not aware of the merits of each individual demand. And the GAAP precept of Accounting for Contingencies ("FAS 5") requires disclosure of probable losses, even when the losses are not estimable, as long as there is a "manifestation by a potential claimant of an awareness of a possible claim or assessment." FAS 5, ¶ 10. Under FAS 5, BoA was obligated to disclose the general nature of the potential liability that it faced. Its failure to do so constituted a violation of FAS 5. The Executive Defendants were made aware of these potential liabilities by various demand letters and by their role in camouflaging those demands. (AC ¶¶ 121(e), (k), (1), (n).) By certifying that they were complying with FAS 5 when they had failed to disclose such potential liabilities, they knowingly made materially misleading statements. Accordingly, Plaintiff's allegations regarding the Executive Defendants' violation of GAAP and SEC regulations give rise to a strong inference of scienter.

III. *Section 20(a) Claims*

Plaintiff asserts claims against the Executive Defendants for violations of Section 20(a) of the Exchange Act. To survive a motion to dismiss, plaintiff must allege: (1) "an underlying primary violation by the controlled person"; (2) "control over the controlled person"; and (3) "particularized facts as to the controlling person's culpable participation in the fraud perpetrated by the controlled person." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F.Supp.2d 192, 233 (S.D.N.Y. 2004); *see also In re Smith Barney Transfer Agent Litig.*, 884 F.Supp.2d 152, 166 (S.D.N.Y.2012).

"While the Second Circuit has not yet addressed the meaning of culpable participation at length, other than to state that a determination of § 20(a) liability requires an individualized determination of a defendant's particular culpability, courts have required a showing of both fraudulent conduct and a culpable state of mind." *In re Emex Corp. Sec. Litig.*, No. 01 Civ. 4886(SWK), 2002 WL 31093612, at *10 (S.D.N.Y. Sept. 18, 2002) (internal quotation marks omitted).

Originally, this Court dismissed Plaintiff's Section 20(a) claim for "failing to allege particularized facts of the Executive Defendants' culpable participation in the fraud perpetrated by the controlled person." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F.Supp.2d at 361 (internal quotations omitted). As explained above, Plaintiff's new allegations plausibly establish fraudulent conduct and a culpable state of mind as to all Executive Defendants for failing to comply with GAAP and SEC regulations and against Moynihan for failing to disclose repurchase liabilities. Accordingly, the Executive Defendants' motion to dismiss Plaintiff's Section 20(a) claim is denied.

## CONCLUSION

For the foregoing reasons, the Executive Defendants' motion to dismiss the Amended Complaint is denied. The Clerk of the Court is directed to terminate the motion pending at ECF No. 173.

SO ORDERED.

## MEMORANDUM & ORDER

Lead Plaintiff Pennsylvania Public School Employees' Retirement System ("Plaintiff") brings this putative class action against Bank of America Corporation ("BoA") and current and past officers and directors of BoA: Kenneth D. Lewis, Joseph Lee Price, II, Brian T. Moynihan, Neil Cotty, and Charles H. Noski (the "Executive Defendants"). By Memorandum & Order dated April 17, 2013, this

Court denied the Executive Defendants' motion to dismiss. Moynihan moves for partial reconsideration of that Memorandum & Order.

## BACKGROUND

This Court's July 2012 and April 2013 Memoranda & Orders set forth the allegations underlying this action. *See* 939 F.Supp.2d at 448; *Pa. Public Sch. Emps' Ret. Sys. v. Bank of Am. Corp.*, 874 F.Supp.2d 341, 346 (S.D.N.Y.2012).

## DISCUSSION

### I. *Reconsideration*

"A motion for reconsideration under Local Rule 6.3 will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Panchishak v. U.S. Dep't of Homeland Sec.*, No. 08 Civ. 6448(WHP), 2010 WL 4780775, at *1 (S.D.N.Y. Nov. 22, 2010) (internal quotation marks omitted) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)), *aff'd*, 446 Fed.Appx. 361 (2d Cir.2011). "It is implicit in this language that a motion for *reconsideration* cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been *considered.*" *Koehler v. Bank of Bermuda Ltd.*, No. M18–302 (CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005); *see also Panchishak*, 2010 WL 4780775, at *1. Reconsideration is not an invitation for parties to "treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *de los Santos v. Fingerson*, No. 97 Civ. 3972(MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998). "The standard for reconsideration is strict and the decision is within the sound discretion of the district court." *Robbins v. H.H. Brown Shoe Co., Inc.*, No. 08 Civ. 6885(WHP), 2009 WL 2496024, at *1 (S.D.N.Y. July 22, 2009) (internal quotation marks omitted).

In its April 2013 Memorandum & Order, this Court considered three theories of securities fraud liability. Specifically, Plaintiff alleged that the Executive Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 and Section 20(a) of the Exchange Act because they made misleading statements despite knowing that (1) BoA was vulnerable to repurchase claims; (2) BoA had a material weakness in its internal controls; and (3) BoA was failing to comply with generally accepted accounting principles ("GAAP") and SEC regulations. This Court found that Plaintiff's allegations regarding BoA's failure to comply with GAAP and SEC regulations plausibly stated claims against each Executive Defendant. It also found that Plaintiff's allegations regarding Moynihan's knowledge of repurchase claims plausibly stated a claim. Moynihan now moves for reconsideration of that latter finding.

This Court found that, among other things, a letter dated May 13, 2010 sent from BoA's outside counsel to the Financial Crisis Inquiry Commission ("FCIC") established Moynihan's scienter. According to Moynihan, this finding was improper because the Court did not take judicial notice of the contents of the letter and instead relied instead on Plaintiff's description in the Amended Complaint. In its July 2012 Memorandum & Order, this Court relied on the Original Complaint and made the following observations regarding the letter: "BoA informed the FCIC that in 2006 and 2007, Countrywide sold mortgage-backed securities with a total par value of $118 billion. The letter further noted that the par value of the interest

held by BoA was only $2 billion as of February 2010. The letter also stated that 37% of Alt–A loans and 52% of Countrywide's subprime loans were delinquent." *Pa. Public Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 359. Relying on a host of allegations, this Court found that the Original Complaint raised a strong inference against BoA concerning its knowledge of repurchase claims. As an example, this Court found that the May 13 letter bolstered an inference of scienter because the letter's contents "summarized the negative effects flowing from BoA's overemphasis on generating loans for securitization without due regard to prudent lending." *Pa. Public Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 359.

A review of the May 13 letter confirms this Court's initial description. The letter asserts: "The par value at issuance of the securities sold by Countrywide was approximately $118 billion." (Declaration of Scott D. Musoff, dated Nov. 5, 2012, ("Musoff Decl.") Ex. A: Correspondence between BoA and the FCIC, dated May 13, 2010 ("May 13 letter") at 7.) It also notes that "[t]he value of [BoA's] retained interest in these securities was approximately $2 billion as of February 19, 2010," and states that "[f]or the legacy Countrywide Alt–A loan portfolio, as of December 31, 2009, approximately 37% were delinquent by thirty days or more[,] and . . . [f]or the legacy Countrywide subprime first lien loan portfolio, as of December 31, 2009, approximately 52% of loans were delinquent by thirty days or more." Finally, it reports that the "value of the entities' retained interest has substantially decreased since the issuance of those securities." (Musoff Decl. Ex. A at 7).

Far from being reasonably expected to alter this Court's conclusions, the May 13 letter corroborates Plaintiff's original complaint. Moynihan argues that this Court erred in concluding that the FCIC letter "summarized the negative effects flowing from BoA's overemphasis on generating loans for securitization without due regard to prudent lending." *Pa. Public Sch. Emps' Ret. Sys.*, 874 F.Supp.2d at 359. But the letter speaks for itself and supports no other conclusion.

Moynihan contends that the letter says nothing about exposure to repurchase claims and merely alerts readers to the decline in value in subprime mortgages. While the letter does not explicitly reference repurchase claims, it buttresses allegations that Moynihan was aware of the consequences of BoA's overemphasis on generating mortgage inventory. The letter reveals Moynihan's awareness of the sheer magnitude of the securitization of subprime mortgages and their subsequent precipitous decline in value. Knowledge of these facts, viewed in context with the other allegations in the Amended Complaint, make it more likely that Moynihan knew that BoA faced repurchase claims far larger than what it had disclosed to the public.

Unlike the atomized approach to scienter Moynihan urges this Court to adopt, no single allegation need conclusively establish scienter. While courts may address allegations in sequence, they must review them as a whole: "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (emphasis in original). Taken collectively, the allegations against Moynihan plausibly state a strong inference that Moynihan acted with scienter regarding the repurchase claims.

*CONCLUSION*

For the foregoing reasons, Moynihan's motion for partial reconsideration is denied. The Clerk of the Court is directed to terminate the motion pending at ECF No. 199.

SO ORDERED.